UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JANICE DRAWHORN-DAVIS                         CIVIL ACTION

VERSUS                                         NO. 19-496-SDD-RLB

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 9, 2020.

                                                               RICHARD L. BOURGEOIS, JR.
                                                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JANICE DRAWHORN-DAVIS            CIVIL ACTION

VERSUS            NO. 19-496-SDD-RLB

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 4). The motion is opposed. (R. Doc. 5). Plaintiff has filed a reply. (R. Doc. 9).

The Court held oral argument on January 13, 2020. (R. Doc. 15).

**I.  Background**

On or about July 30, 2018, Janice Drawhorn-Davis ("Plaintiff") initiated this personal injury action involving an automobile crash in state court, naming as defendants her own liability insurer, USAA General Indemnity Company ("USAA"), the other driver, Yusuf Atkins ("Atkins"), and Atkins' liability insurer, State Farm Mutual Automobile Insurance Company ("State Farm"). (R. Doc. 1-1). There is no dispute that both Plaintiff and Atkins are citizens of the State of Louisiana. There is also no dispute that the liability limit on the State Farm policy is $25,000. (R. Doc. 1 at 4; R. Doc. 1-5).

On July 30, 2019, USAA removed the action on the basis that the Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff settled her claims with State Farm and Atkins, a non-diverse defendant, prior to removal. (R. Doc. 1).[1] In pertinent part, USAA asserts

---

[1] USAA removed this action one year after it was initiated in state court. At oral argument, USAA's counsel represented that removal was made on this date out of concern that delay of removal would violate the one-year for removal of a diversity action. *See* 28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on

1

that while Atkins is domiciled in Louisiana, "his citizenship should not be considered because he is now a nominal defendant and is being dismissed from the suit." (R. Doc. 1 at 3). In short, USAA claims that Plaintiff entered into an enforceable settlement agreement with State Farm and Atkins, and this settlement agreement constitutes a "voluntary act" that effectively eliminated Plaintiff's claims against Atkins prior to removal.

The following is the relevant timeline of events and correspondence concerning the alleged settlement agreement:

> May 2, 2019 – *Email from State Farm/Atkin's counsel to Plaintiff's counsel* (Attorney Brilliant P. Clayton) – "Brilliant, now that I have reviewed Ms. Davis's pre-accident medical history, I can offer State Farm's $25,000 policy limits for a release and dismissal of State Farm [and Atkins].[2] Please relay this offer to your clients and let me know the response." (R. Doc. 5-1).
>
> May 10, 2019 – *Email from Plaintiff's counsel to State Farm/Atkin's counsel* – "My client accepts your offer of $25,000 contingent on receiving a copy of [declarations] page, an affidavit of no additional insurance and an affidavit of not being in course and scope." (R. Doc. 5-2).
>
> May 10, 2019 – *State Farm/Atkin's counsel sends "confirmation of coverage" document in lieu of a declarations page.*[3]
>
> June 4, 2019 – *Email from Plaintiff's counsel to State Farm/Atkin's counsel* – "What is the status of the settlement check and affidavits of no additional insurance in the Janice Davis matter?" (R. Doc. 5-3).
>
> June 4, 2019 – *Email from State Farm/Atkin's counsel to Plaintiff's counsel* – "Brilliant, we have the Affidavit from [Atkins] should be coming in any day now to sign it so that one of the attorneys available can notarize it. The settlement check is in my office. However, I do not yet have anything either in writing or verbally from USAA authorizing waiver of their [medical payments coverage]

---

the basis of jurisdiction conferred by section 1332 more than 1 year after the commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.").

[2] The parties' correspondence references both Yusef Atkins, Sr. and Yusef Atkins, Jr. It appears that Yusef Atkins, Sr. is the policyholder and Yusef Atkins, Jr. was an authorized driver at the time of the accident. Regardless, there is no dispute that the settlement negotiations involved the non-diverse defendant at issue.

[3] State Farm/Atkin's counsel made this representation at oral argument. State Farm/Atkin's counsel further represented that it is State Farm's business practice to issue a "confirmation of coverage" document in lieu of a requested declarations page. State Farm/Atkin's counsel further represented a "confirmation of coverage" is a certified statement with the policy number, coverage limits, and named insured.

2

lien. I contacted their attorney, Chris Stidham, but have not gotten a response yet. Have you?" (R. Doc. 5-4).

June 6, 2019 – *State Farm/Atkin's counsel sends copies of the affidavits to Plaintiff's counsel*.[4]

June 13, 2019 – *Email from State Farm/Atkin's counsel to Plaintiff's counsel* – "Brilliant, I spoke to Chris Stidham about waiving the med pay sub claim and he said he would discuss it with his client and get back with me as soon as he hears something. I'll keep you posted." (R. Doc. 5-5).

June 18, 2019 – *Email from State Farm/Atkin's counsel to Plaintiff's counsel* – "Brilliant, good news. I just got off the phone with Chris Stidham and he said that USAA will waive their med pay sub lien. I believe we still have the $25,000 settlement check in my office, so we can now get that out to you along with the dismissal documents." (R. Doc. 5-6).

June 18, 2019 – *Email from Plaintiff's counsel to State Farm/Atkin's counsel* – "Good deal." (R. Doc. 5-7).

Jun 20, 2019 – *State Farm/Atkin's counsel mails settlement funds and release documents to Plaintiff's counsel*. (R. Doc. 5-8).[5]

July 22, 2019 – *Email from State Farm/Atkin's counsel to USAA's counsel* – "Michael, I have settled with [Plaintiff's] attorney, but have not yet received the signed Partial Dismissal of State Farm and [Atkins]. I also have sent the plaintiff's attorney Affidavits of No Other Insurance signed by [Atkins]. Please feel free to call me if you have any questions." (R. Doc. 1-3 at 1).

July 30, 2019 – *USAA removes the action*. (R. Doc. 1).

At oral argument, the parties represented that Plaintiff had not yet negotiated the settlement check and Plaintiff still had not signed a release of her claims.

Plaintiff is now seeking remand on the basis that she did not actually settle her claims against State Farm and Atkins under Louisiana law, and, accordingly, the presence of Atkins as a defendant destroys complete diversity. (R. Doc. 4).

---

[4] State Farm/Atkin's counsel made this representation at oral argument.
[5] State Farm/Atkin's counsel also represented at oral argument that the settlement documents and funds were sent on this date, including additional copies of the affidavits.

3

**II.     Arguments of the Parties**

In support of remand, Plaintiff argues that USAA has not met its "heavy burden" of establishing that Atkins was improperly joined as a non-diverse defendant for the purposes of defeating diversity jurisdiction. (R. Doc. 4-1 at 2-4). Plaintiff argues that the "alleged settlement is null on its face" because the settlement demand "was contingent on conditions which were not met" and a perfected settlement agreement cannot be "inferred from an agglomeration of unsigned documents, unnegotiated settlement checks and transmittal letters such as exist in the instant case." (R. Doc. 4-1 at 5) (emphasis removed). In addition to remand, Plaintiff seeks an award of reasonable expenses, including attorney's fees, pursuant to 28 U.S.C § 1447(c). (R. Doc. 4-1 at 5-6).

In opposition, USAA argues that it is not asserting that the Court has diversity jurisdiction because Atkins was improperly joined as a defendant and is instead arguing that removal is proper because of a "voluntary act of the plaintiff that eliminates non-diverse defendants from the matter." (R. Doc. 5 at 1). USAA argues that Plaintiff and Atkins entered into "a valid and enforceable settlement agreement" prior to remand and, accordingly, Atkins is a "nominal party" for the purposes of diversity jurisdiction. (R. Doc. 5 at 1-5). USAA argues that Plaintiff has no possibility of recovery against Atkins in light of the settlement agreement. (R. Doc. 5 at 5).

In reply, Plaintiff acknowledges that settlement between a plaintiff and a nondiverse defendant may render an action removable provided the settlement is irrecoverable, binding, and enforceable under state law. (R. Doc. 9 at 2). Plaintiff argues that USAA has not met its burden of demonstrating that the settlement agreement is binding under Louisiana law by providing evidence that "the contingent terms of the proposed settlement had in fact been met at the time of

4

removal." (R. Doc. 9 at 3). Plaintiff further argues that USAA has otherwise failed to meet its burden of establishing that a binding settlement agreement was reached prior to removal. (R. Doc. 9 at 4-5).

### III. Law and Analysis

#### A. Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[6] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

A case that is not originally removable under "diversity jurisdiction because of the presence of a nondiverse defendant may be removed only after it is clear under applicable state law that the nondiverse defendant has been taken out of the case, leaving a controversy wholly between the plaintiff and the diverse defendant." *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56

---

[6] There is no dispute that the amount in controversy requirement is satisfied. Accordingly, the Court will turn directly to the issue of whether the presence of Atkins as a non-diverse defendant destroys complete diversity.

F.3d 689, 694 (5th Cir. 1995). "Federal courts must look to state law to determine whether removal is proper on the ground that the nondiverse defendant is no longer effectively a party to the case." *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000). "A case may be removed based on any voluntary act of the plaintiff that eliminates that nondiverse defendant from the case." *Id*.

There is no dispute that Louisiana governs any settlement agreement entered between Plaintiff and Akins. Under Louisiana law, a settlement agreement is called a compromise, which is defined as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. "[A] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." La. Civ. Code art. 3072. As with any contract, a compromise "is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927; *see Aloisio v. Christina*, 146 So. 3d 564, 566 (La. App. 1st Cir. 2014) ("[B]efore a district court can find the existence of a valid written compromise agreement, it must find an offer and an acceptance.").

"[T]he requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the [offeror] and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings." *Felder v. Georgia Pac. Corp.*, 405 So. 2d 521, 523-24 (La. 1981); *see Administrators of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 692045, at *4 (E.D. La. Feb. 18, 2011) ("A settlement agreement may be binding even if it is subject to later formalities that do not occur."). The writing, whether contained in one or more documents, must satisfy two essential elements: "(1)

6

mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Trahan v. Coca Cola Bottling Co. United, Inc.,* 894 So.2d 1096, 1104 (La. 2005).

"Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *See Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998). "Interpretation is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. *See also Trahan*, 894 So.2d at 1106-07 (a compromise "must be interpreted in accordance with the intent of the parties" and "is governed by the same general rules of construction that are applicable to contracts.").

### B. Analysis

The sole issue before the Court is whether Atkins and Plaintiff entered into an enforceable settlement agreement prior to removal. If so, then this voluntary act of Plaintiff requires the Court to ignore Atkin's citizenship for the purposes of determining whether there is complete diversity. *See Jones v. Travelers Indemnity Co.*, No. 18-946, 2018 WL 6684584, at *3 (E.D. La. Dec. 19, 2018) ("The plaintiff's voluntary action in terminating his claims against [non-diverse defendant] through the settlement agreement renders him no longer a party to the case."); *Hargrove v. Bridgestone/Firestone N. Am. Tire, LLC*, No. 10-0318, 2012 WL 692410, at *4 (W.D. La. Mar. 2, 2012) ("Plaintiff's express, written agreement to accept a sum certain to terminate litigation against the non-diverse defendants and those defendants' agreement to pay that sum constitutes a compromise as defined by Louisiana law," and "[t]hat expression of intent constituted a voluntary action that made this previously non-removable case removable as it

7

made the non-diverse defendants nominal parties whose presence in the lawsuit could be ignored.").[7]

On May 2, 2019, State Farm/Atkin's counsel made an offer of $25,000 in policy limits for a release and dismissal of both State Farm and Atkins. (R. Doc. 5-1). Plaintiff's counsel responded on May 10, 2019 by accepting the offer of policy limits "contingent on" the receipt of three things: (1) a declarations page, (2) an affidavit of no additional insurance, and (3) an affidavit that Atkins was not in the course and scope of employment. (R. Doc. 5-2). Plaintiff does not argue that there was not a meeting of the minds with respect to the settlement agreement. Instead, Plaintiff argues that USAA has not met its burden of establishing a valid settlement agreement because it has not submitted evidence that Plaintiff signed the settlement release or dismissal or that other "conditions of the settlement have been met such as providing affidavits of additional insurance or confirming that Atkins was not in the course and scope of his employment." (R. Doc. 9 at 3-4). At oral argument, Plaintiff's counsel focused on arguing that State Farm/Atkin's counsel did not provide a declarations page.

The Court will first address whether the "conditions" of Planitiff's acceptance have any bearing on the formation of the compromise, and, if so, whether those conditions were satisfied prior to removal. The Court will then address whether Plaintiff's failure to sign the releases or negotiate the settlement check has any bearing on whether the compromise was formed.

On May 10, 2019, Plaintiff accepted State Farm/Atkin's offer and introduced what appears to be three suspensive conditions to be met prior to his own duty to perform, namely

---

[7] While a settlement agreement or dismissal are sufficient conditions for finding a "voluntary act" that effectively eliminates a plaintiff's claims against a non-diverse defendant prior to removal, they are not necessary conditions for such a finding. Courts have held that an action becomes removable where the plaintiff has voluntarily abandoned his claims against a nondiverse defendant by clearly indicating "his intention to abandon or discontinue the action as to the nondiverse defendants" even in the absence of a settlement agreement or dismissal. *Molden v. Firestone Tire & Rubber Co.*, 754 F. Supp. 521, 522-23 (M.D. La. 1990) (plaintiff "voluntarily abandoned" claim against non-diverse defendant through failure to serve or pursue claims).

releasing State Farm and Atkins from liability.[8]  State Farm/Atkin's counsel represented at oral argument that the "confirmation of coverage" document provided to Plaintiff on that same day is superior to a declarations page for establishing coverage at the time of the incident and that it is State Farm's standard practice to provide such documents in lieu of a requested declarations page.  State Farm/Atkin's counsel further represented that Plaintiff's counsel at no point prior to seeking remand complained that the declarations page itself was not provided.  Consistent with that representation, the correspondence in the record demonstrates no specific concern or request by Plaintiff for the declarations page after receipt of the "conformation of coverage" document.

To the extent there is any ambiguity with respect to whether the parties entered into an enforceable settlement agreement on May 10, 2019, the later correspondence and behavior of the parties clarifies that an agreement was reached.  Approximately one month after State Farm/Atkin's counsel sent the "confirmation of coverage" document, Plaintiff's counsel asked for the status of the "settlement check" and "affidavits of no additional insurance." (R. Doc. 5-3).  Again, no further request for a declarations page was made.  State Farm/Atkin's counsel immediately responded that the check was ready and Atkin's was coming in to sign the affidavits, but that USAA had not yet authorized waiver of their medical payments coverage lien.  (R. Doc. 5-4).  State Farm/Atkin's counsel mailed the affidavits the next day.  Finally, on June

---

[8] "A suspensive condition is the civil law analog of a condition precedent." *In re Myles*, 395 B.R. 599, 604 (Bankr. M.D. La. 2008). "A conditional obligation is one dependent upon an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La Civ. Code art. 1767.  None of the parties argue that the May 10, 2019 acceptance, which introduced the foregoing conditions, was in fact a counteroffer, which is defined under Louisiana law as "[a]n acceptance not in accordance with the terms of the offer is deemed to be a counteroffer." La. Civ. Code art. 1943.  Even if Plaintiff's May 10, 2019 correspondence constituted a counteroffer, it was accepted by State Farm and Atkins through performance, i.e., providing the information requested by Plaintiff. *See* La. Civ. Code art. 1927 ("Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.  Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made."); *see also Chaisson v. Chaisson*, 690 So. 2d 899, 901 (La. App. 2d. Cir. 1997) ("An offer may be accepted other than by sacramental words such as 'I accept your offer.'").  Furthermore, as discussed below, even if an enforceable settlement agreement was not formed on May 10, 2019, it was clearly formed prior to removal.

9

18, 2019, State Farm/Atkin's counsel informed Plaintiff's counsel that USAA would waive its medical payments coverage lien. (R. Doc. 5-6). Plaintiff's counsel responded with "good deal" that same day. (R. Doc. 5-7). Two days later, State Farm/Atkin's counsel mailed the settlement funds and release documents to Plaintiff's counsel. (R. Doc. 5-8). These correspondences between the parties support a finding that the Plaintiff and Atkins had a meeting of the minds with respect to entering an enforceable settlement agreement.

Plaintiff appears to argue that the introduced conditions of the settlement agreement have not been satisfied and, therefore, an enforceable compromise was not formed. Given the context of the communications, whether Plaintiff's conditions were fulfilled is an issue of whether Plaintiff had a duty to perform under the settlement agreement, not whether the settlement agreement itself was formed.[9] Even if fulfillment of the conditions was required for the formation of the settlement agreement, the Court finds that they were satisfied prior to removal. Any dispute with respect to whether the "confirmation of coverage" document satisfied the condition that a declarations page be provided is resolved by the June 18, 2019 email. The Court need not decide whether that email evidences that a contract was formed on May 10, 2019 or the date of the email because either date is prior to removal.

Similarly, the Court rejects Plaintiff's argument that a binding settlement agreement was not formed because Plaintiff has not signed releases of liability or negotiated the settlement check. In support of this proposition, Plaintiff relies heavily on decisions that stand for the proposition that the mailing of a settlement check to be negotiated and a release of liability to be

---

[9] *See Boyd v. Texas Dep't of Criminal Justice*, 780 Fed. App'x 145, 149 (5th Cir. 2019) ("There are two types of conditions precedent. A condition precedent to the formation of a contract prevents the formation of a contract except upon realization of the condition. A condition precedent to an obligation to perform, on the other hand, does not prevent contract formation, but does prevent a duty to perform from arising except upon realization of the condition.").

signed do not, without more, form an enforceable settlement agreement. *See Tran v. Allstate Ins. Co.*, 806 So. 2d 103, 104-06 (La. App. 4th Cir. 2001) (sending "receipts, releases, a joint motion and order to dismiss, and a check" did not constitute an enforceable settlement agreement); *Huey v. State Farm Mut. Auto. Ins. Co.*, 796 So. 2d 724, 724 (La. App. 2d Cir. 2001) (sending a settlement check and "dismissal and release" did not constitute an enforceable settlement agreement); *Townsend v. Square*, 643 So. 2d 787 (La. App. 4th Cir. 1994) (written confirmation of oral telephone conversation that included settlement check and release did not constitute an enforceable settlement agreement); *Singleton v. Bunge Corp.*, 364 So. 2d 1321, 1324-25 (La. App. 4th Cir. 1978) (presentation of "written draft, receipt and release, and motion to dismiss" did not alone complete the contract of compromise, since plaintiffs refused to sign these documents").

To be clear, where the removing defendant cannot prove the existence of an enforceable settlement agreement with a non-diverse defendant, remand is appropriate for lack of diversity jurisdiction. *See Cella v. Allstate Prop. & Cas. Ins. Co.*, No. 10-2744, 2010 WL 4027712, at *3 (E.D. La. Oct. 13, 2010) (removing defendants failed to meet their burden of proving the existence of an enforceable settlement agreement where the record merely contained correspondence from the insurer presented the plaintiff with a release for signature and a settlement check for negotiation); *see also Landry v. Eagle, Inc.*, No. 12-1022, 2012 WL 2338736, at *4 (E.D. La. June 19, 2012) (removing defendant failed to meet its burden of proving plaintiffs settled their claims against a co-defendant where the only evidence offered was a pre-trial outline referencing that plaintiff's claims against another co-defendant were settled); *Taco Tico of New Orleans, Inc. v. Argonaut Great Central*, No. 09-3502, 2009 WL 2160436 (E.D. La. July 16, 2009) (removing defendant failed to prove existence of an

11

enforceable settlement agreement where the only evidence presented was an email exchange between counsel stating that the parties had reached an oral agreement to settle); *Bush v. Waterman Steamship Corp.*, No. 00-0920, 2000 WL 913812, at *2 (E.D. La. July 5, 2000) (granting remand where removing defendant did not prove the existence of an enforceable settlement agreement).

Here, the record supports a finding that the parties entered into an enforceable written settlement agreement <u>prior</u> to the mailing of the settlement check and release. That Plaintiff did not negotiate the settlement check or sign the release of liability has no bearing on whether an actual written settlement agreement was formed. Given the correspondence between counsel prior to removal, the Court concludes that an enforceable settlement agreement was entered between Plaintiff and Atkins. *See Preston Law Firm, L.L.C. v. Mariner Health Care Management Co.*, 622 F.3d 384, 390-91 (5th Cir. 2010) (correspondence between counsel formed a valid and enforceable compromise); *Center for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, No. 11-806, 2016 WL 5951651 (E.D. La. Oct. 13, 2016) (same); *Geer v. BP America Production Co.,* 150 So. 3d 621, 626 (La. App. 3d Cir. 2014) (same); *see also In re Deepwater Horizon*, 786 F.3d 344, 357 n. 28 (5th Cir. 2015) ("[E]ven where the parties have not yet agreed to the precise terms and language of the release, they may nonetheless form a binding settlement agreement by agreeing to both the existence of a release and the amount of payment. Indeed, in the real world of tort litigation, it would be difficult to operate any differently; when an attorney, with his or her client's consent, agrees to settle a case for a sum certain, the plaintiff inevitably realizes that the defendant has bought its peace, and will expect to sign a release that will discharge the defendant in the broadest terms.").

In short, Plaintiff clearly intended to abandon her claims against Atkins and "effectively eliminated the nondiverse defendant." *Estate of Martineau*, 203 F.3d at 911-12. State Farm offered to pay the full policy limits for the release of State Farm and Atkins and Plaintiff accepted this offer. Atkins provided affidavits of no additional insurance and not being in the course and scope of employment. The parties intended to put an end to Planitiff's claims against State Farm and Atkins and made reciprocal concessions to adjust their differences, namely the promises to pay the full policy limits for a release of State Farm and Atkins. *See Trahan,* 894 So.2d at 1104.

Having considered the record as a whole, the Court concludes that Atkins and Plaintiff entered into an enforceable settlement agreement prior to removal. In light of this voluntary act of Plaintiff, the Court concludes that the non-diverse defendant Atkins is a nominal party and his citizenship is to be ignored for the purposes of diversity jurisdiction. Accordingly, the Court is properly exercising diversity jurisdiction over this action.

**IV.    Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion for Remand (R. Doc. 4) be **DENIED.**

Signed in Baton Rouge, Louisiana, on March 9, 2020.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**

13